IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL FOSTER, | : | CIVIL ACTION NO. 2:11-cv-02476 |
| *Plaintiff*, | : | |
| vs. | : | |
| KEYSTONE FREIGHT CORP, | : | |
| *Defendant.* | : | |

**DEFENDANT KEYSTONE FREIGHT CORP.'S PRETRIAL MEMORANDUM**

Defendant Keystone Freight Corp. ("Keystone"), by and through its undersigned attorneys, submits this Pretrial Memorandum pursuant to Local Rule 16.1.

**I.    Nature of the Action & Jurisdiction**

This is an employment discrimination matter arising out of out Keystone's termination of Plaintiff Michael Foster's employment in April 2010.  In short, Plaintiff claims that Keystone's decision to terminate him was based solely on the fact that he underwent a kidney transplant in October 2007, more than two years prior to beginning his employment with Keystone.  He has filed a two count Amended Complaint alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S.A. § 951 et seq.

This Court has original subject matter jurisdiction over Plaintiff's Federal ADA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state PHRA claim pursuant to 28 U.S.C. § 1367.

II. **Statement of Facts**

A. **Keystone's Application Process**

Keystone is an interstate motor carrier. Keystone's hiring procedures are governed by regulations set forth by the Federal Motor Carrier Safety Administration, a division of the United States Department of Transportation ("DOT"). Among other things, these regulations require Keystone to investigate an applicant's previous employment history, prior residences and accident history. In addition, the regulations preclude Keystone from hiring certain applicants, such as individuals with previous convictions for driving under the influence of alcohol and felonies involving motor carriers. The DOT is authorized to issue fines, downgrade ratings and order a cease of operations to motor carriers that fail to abide by these regulations. In certain cases, Keystone's hiring standards are more stringent than the DOT's. In particular, out of an abundance of caution Keystone requires applicants to provide ten (10) years of employment history, as opposed to merely three as required by the DOT.

Keystone occasionally receives applications from candidates that have gaps in their previous employment history due to medical reasons. These applicants are not precluded from employment with Keystone. Keystone simply asks these applicants to provide some documentation, such as a doctor's note, verifying the reason for the gap and clearing them for work as a truck driver. Among other things, this ensures that the employment gap was legitimately for medical reasons and not for some other reason that would disqualify the applicant under the above-referenced DOT regulations.

The process for hiring drivers is handled by Keystone's Safety Compliance Officer, Clarence Johnson. Mr. Johnson utilizes a detailed checklist in reviewing driver applications to ensure compliance with the DOT regulations, as well as Keystone's internal company policies.

Should any issues or concerns arise with an application, such as the applicant being unable to provide verification of a certain employer, Mr. Johnson brings the matter to the attention of Keystone's Vice President of Risk Management, William Cluver, who reviews and makes the final decision.

### B. Plaintiff's Application

On or about March 3, 2010, Plaintiff applied for a driver position with Keystone. Pursuant to company policy, Plaintiff was permitted to assist another driver on March 23, 29 and 30, 2012 while his application was being processed. Plaintiff's assistance consisted of riding along with another driver and making deliveries to one of Keystone's clients. Although Plaintiff did not actually drive any trucks during these three days, he was provided $185 in daily compensation. This was not the rate that Plaintiff would have been paid if he became employed on a full-time basis.

In reviewing Plaintiff's application, Mr. Johnson discovered that Plaintiff's employment history contained a four and a half year gap between January 2004 and July 2008. The application provided no explanation for the gap, except to state that Plaintiff was "unemployed" during this time frame. Mr. Johnson asked for further details regarding this gap. In response, Plaintiff provided a handwritten note dated March 30, 2010 that stated the following: "[t]he reason I was not working was due to an illness that I have since recovered from." Mr. Johnson brought the note to Mr. Cluver for his review two or three days after receiving it from Plaintiff. Given that Plaintiff's note was vague and was drafted by Plaintiff, Mr. Cluver asked Mr. Johnson to obtain further information, namely a doctor's note.

While he was waiting for Plaintiff to provide additional information, Mr. Johnson noticed a further discrepancy in Plaintiff's application. In particular, based on a letter Plaintiff submitted

3

as proof of residency, Mr. Johnson noticed that as of December 2009 Plaintiff appeared to be collecting social security disability benefits while concurrently working for another employer. Again, Mr. Johnson brought the information to the attention to Mr. Cluver. Based on his experience, Mr. Cluver was under the impression that it is illegal to collect social security benefits while also working. This issue combined with the suspicious, handwritten note provided by Plaintiff caused Mr. Cluver to immediately terminate Plaintiff's employment.

Sometime after Mr. Cluver's decision, Mr. Johnson received a doctor's note indicating that Plaintiff underwent a kidney transplant on October 28, 2007 and stating "Mr. Foster is stable form a kidney transplant standpoint and is therefore cleared to go back to work and resume all normal activity." At this point, Keystone had already discovered further discrepancies in Plaintiff's employment history and the decision to terminate had already been made.

### III. Legal Issues

The McDonnell Douglas burden shifting analysis applies to discrimination claims under the ADA and the PHRA. That is, a plaintiff must first demonstrate a prima facie case of discrimination by showing: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he suffered an adverse employment decision as a result of discrimination. Serbin v. CONRAIL, 140 Fed. Appx. 336, 337-338 (3d Cir. 2005). Once a plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the action, which then shifts the burden back to the Plaintiff to demonstrate that the employer's articulated reasons are a mere pretext for discrimination. Id. The ultimate burden of persuasion remains at all times with the plaintiff. Id.

### 1. Plaintiff is not disabled.

In order to be "disabled" a plaintiff must demonstrate that he: (1) has a "physical or mental impairment that substantially limits one or more of his major life activities," (2) has a "record of such an impairment," or (3) is "regarded as having such an impairment." Johnson v. AMTRAK, 2009 U.S. Dist. LEXIS 54191, 16-17 (E.D. Pa 2009). Plaintiff appears to be alleging that he is disabled under all three of these definitions.

As set forth in Keystone's Motion for Summary Judgment, Keystone intends to demonstrate that Plaintiff is not "disabled" under any of the three categories set forth under the statute. As a result, Plaintiff is not able to establish a prima facie case of age discrimination.

### 2. Keystone has articulated a legitimate reason for its actions.

Even if Plaintiff could establish a prima facie case, Keystone still has the opportunity to demonstrate that it had legitimate reasons for terminating his employment. This is an easy burden for Keystone to satisfy. McElhinney v. Quest Diagnostics, Inc., 152 F.Supp.2d 745, 749 (E.D.Pa. 2001). Keystone has articulated that Plaintiff was not hired as a full time driver because of inconsistencies contained on his employment application. In particular, Plaintiff had an unexplained four year gap in his employment history and appeared to be receiving social security benefits while concurrently working full time.[1] Mr. Cluver will testify that these inconsistencies caused him concern from a safety perspective and essentially required him to terminated Plaintiff under the DOT safety regulations. These types of safety and security concerns are legitimate reasons for terminating Plaintiff's employment.

---

[1] We are mindful of the fact that there are circumstances where an individual can legitimately receive social security benefits while at the same time holding some type of employment. The relevant inquiry is not whether the employer's legitimate reason was correct or made good business sense, however. Instead, an employer satisfies its burden under the McDonnell Douglas test by establishing that it (the employer) legitimately had a non-discriminatory basis for its decision.

5

### 3. **Plaintiff cannot demonstrate pretext.**

In order to demonstrate pretext, Plaintiff must provide evidence from which a factfinder could reasonably (i) "disbelieve the employer's articulated legitimate reasons…" or (ii) "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Simpson v. Kay Jewelers, Division of Sterling, Inc., 142 F.3d 639, 644 (3d Cir. 1998). The Third Circuit has interpreted this final requirement as a significant burden, which requires the Plaintiff to prove that "that each of the employer's proffered non-discriminatory reasons . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action.'" Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)). In doing so, "the non-moving plaintiff must demonstrate such weaknesses, implausiblities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its actions" that a reasonable person could rationally find them untrue. Fuentes v. Perskie, 32 F.3d at (emphasis in the original).

The *only* evidence Plaintiff will provide on the pretext issue is (1) the simple fact that Keystone was aware that he had a medical condition of some kind at the time of his termination and (2) the arguably inconsistent testimony of Mr. Johnson regarding when Mr. Cluver received Plaintiff's formal doctor's note. But the Circuit has held that an employer's mere knowledge of a medical condition is not enough to establish a claim under the ADA. See, e.g., Robinson v. Lockheed Martin Corp., 212 Fed. Appx. 121, 125 (3d Cir. 2007) ("the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that an employer regarded employee as disabled or that that perception caused the adverse employment action"). Moreover, Mr. Johnson will testify that he has reviewed literally thousands of

6

employment applications over the course of his eight years with the Company so any slight inconsistency in his recollection as to Plaintiff's application is certainly understandable.

IV.   **Damages**

In the unlikely event that Plaintiff is successful at trial, his damages are severely limited. As a conditional employee, Plaintiff earned $185.00 per day. Had he been hired on a full time bases, Plaintiff would have earned $15.00 per hour. According to Plaintiff, he obtained alternate employment less than a month after being terminated from Keystone earning $17.50 per hour. Thus, assuming he was out of work for one month and worked forty hours a week, Plaintiff's back pay damages would be $2,400.00 and he would be entitled to no damages in front pay. Moreover, Plaintiff has not provided any evidence of any emotional distress.

V.   **Witnesses**

Keystone intends to call William Cluver and Clarence Johnson as witnesses on the issue of liability. Mr. Cluver will also be called to testify as to damages.

VI.   **Exhibits**

D-1:      Plaintiff's Application for Employment (DEF0001-0003);
D-2:      Safety Department Checklist (DEF0004);
D-3:      Acknowledgments signed by Plaintiff (DEF0005-0006 & 0022);
D-4:      New Hire Form (DEF0007);
D-5:      Driver's Application for Employment (DEF0008);
D-6:      Plaintiff's Handwritten Note, Dated 3/30/2010 (DEF0009);
D-7:      March 29, 2010 email from Clarence Johnson (DEF 0010);
D-8:      Social Security Administration Notice (DEF0011);
D-9:      Employment Verifications (DEF0026-29 & 0113-0115);
D-10:    Plaintiff's New Hire Paperwork (DEF0030-61);

| | |
|---|---|
| D-11: | National Retail Systems Driver Hiring Program, Procedures for Screening and Selection of Employees (DEF0067-79); |
| D-12: | April 1, 2010 note from Denise O'Hara, RN, BSN and Accompanying Fax Confirmation (P1-P2); |
| D-13: | Plaintiff's Payroll Information (P3-P5); |
| D-14: | Plaintiff's Charge of Discrimination and Related Documents, Including ADA Intake Questionnaire (P6-P19); |
| D-15: | Plaintiff's First Amended Complaint; |
| D-16: | Defendant's Answer to Plaintiff's First Amended Complaint; |
| D-17: | Plaintiff's Responses to Defendant's First Set of Interrogatories; |
| D-18: | Plaintiff's Responses to Defendant's First Demand for Production of Documents; |
| D-19: | Defendant's Answers and Objections to Plaintiff's First Set of Interrogatories; |
| D-20: | Defendant's Supplemental Answers to Plaintiff's Discovery Requests, by letter dated December 12, 2011; |
| D-21: | Affidavit of William Cluver; |
| D-22: | Plaintiff's Deposition Transcript; |
| D-23: | Plaintiff's Income Tax and Social Security Records (P30-P85); |
| D-24: | §§ 391.15, 391.21 & 391.23 of the Federal Motor Carrier Safety Administration Regulations; |
| D-25: | Employee Termination Data (DEF0080). |

## VII. Days of Trial

Keystone anticipates that two full days will be necessary for trial.

## VIII. Other issues

None.

Respectfully Submitted,

/s/ James J. Panzini
James J. Panzini
Andrew D. La Fiura
JACKSON LEWIS LLP
Three Parkway
1601 Cherry Street, Suite 1350

8

|  |  |
|---|---|
|  | Philadelphia, PA  19102-1317 |
|  | Tel: (267) 319-7802 |
|  | Fax: (215) 399-2249 |
| Date:  October 24, 2012 | ATTORNEYS FOR DEFENDANT |

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2012, Defendant electronically filed its Trial Brief, Proposed Verdict Sheet, Proposed Jury Instructions and Proposed Voir Dire Questions with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record.

JACKSON LEWIS LLP

/s/ *Andrew D. La Fiura*